LUTTRELL et al. v. CLICK. (No. 298.)

(Court of Civil Appeals of Texas. Beaumont. Jan. 2, 1918. Rehearing Denied Jan. 30, 1918.)

1. TRESPASS TO TRY TITLE ⟲41(1) — EVIDENCE—SUFFICIENCY.

Evidence *held* to sustain findings for plaintiff in action of trespass to try title.

2. ADVERSE POSSESSION ⟲110(3)—PLEADING—NECESSITY.

Claimant of land under chain of title from persons who merely occupied and claimed adversely must specially plead the limitation of ten years.

Appeal from District Court, Sabine County; W. R. Blackshear, Judge.

Action by J. M. Click against E. M. Luttrell and others, wherein Mrs. Estella Row-

land intervened. Judgment for plaintiff, and defendants and intervener appeal. Reversed and remanded.

J. W. Minton, of Hemphill, for appellants. W. F. Goodrich, of Hemphill, for appellee.

BROOKE, J. This is a suit of trespass to try title to about 40 acres of land of the Naomi Mackey headright in Sabine county, Tex., wherein J. M. Click is plaintiff and E. M. Luttrell is defendant. Mrs. Estella Rowland intervened.

The controversy or matter in issue was the south boundary line of the 500 acres of land known as the "Pin Oak Pond" tract of land, plaintiff describing the land in his petition as follows:

"Beginning at the southwest corner of the 500-acre tract of land known as the Pin Oak Pond tract, or Wm. H. Harris tract; thence northerly with the west boundary of the 500-acre tract to the lower Milam & San Augustine road; .thence with said road to Ed Smith's west line; thence southerly with Ed Smith's west boundary line to the south line of the 500-acre tract; thence west to the beginning, containing all the land on said 500-acre tract south of said road."

The defendant, in addition to his plea of general denial and not guilty, interposed the pleas to five and ten year limitation to so much of the land described in plaintiff's petition as is bounded as follows:

"Beginning at the southwest corner of the 500-acre tract known as the 'Pin Oak Pond' tract; thence in a northerly direction with the line of the pin oak pond tract to corner on Ed Smith's west line in the lower Milam & San Augustine road; thence in a southerly direction with Smith's west line to corner in the north line of Isaiah Hamilton's land on said Mackey survey; thence in a westerly direction with Hamilton's north line to the place of beginning."

Mrs. Rowland, by her plea in intervention, asserts title to that portion of the land sued for by plaintiffs, under the ten-year statute of limitation, described as follows:

"Beginning at the southwest corner of the 500-acre tract known as the Pin Oak Pond tract; thence in a northeasterly direction with the line of the Pin Oak Pond tract to corner on Ed Smith's west line in lower Milam & San Augustine road; thence in a southerly direction with said Smith's west line to corner in the north line of Isaiah Hamilton's land; thence in a westerly direction with Hamilton's north line to the beginning."

It was agreed by all parties that the land was patented to Naomi Mackey. The evidence disclosed that E. M. Luttrell had no interest in the land, and that he asserted none to it, except the pine timber on the land which he had purchased from Clanton & Brice. Luttrell was cutting this timber when suit was filed, and was enjoined from cutting by writ of injunction. The evidence shows that he had cut about 50,000 feet of pine timber when he was enjoined.

The case was tried by the court without a jury, and the court filed his findings of fact and conclusions of law as follows:

"Findings of Fact.

"(1) I find a deed from Naomi McKey to Matilda McMahon, dated the 8th of June, 1853, conveying a certain tract of land lying and situated in Sabine county, known as the Pin Oak Pond tract, containing 500 acres, in the northeast corner of the survey granted to Naomi McKey by the Mexican government, bounded on the west by the lands of Wm. Scurlock, and on the north and east by the original boundary lines of the said McKey survey, and on the south by Geo. S. Williams.

"(2) I find that it is agreed that the Naomi McKey survey was patented by the state of Texas, of which land in controversy is a part.

"(3) I find a deed from James McMahon and Matilda F. McMahon, his wife, to Miller, Tubb & Co., conveying 500 acres of the Naomi McKey, situated in the northeast corner of said league, and running south with the east boundary of said original survey; thence west with the north line of G. S. Williams' survey to William Scurlock's survey; thence with the east line of the said Wm. Scurlock to the north line of said original survey; thence east with the north line of said league to the place of beginning, containing 500 acres, more or less, said deed being dated the 18th day of November, 1868.

"(4) I find a power of attorney, coupled with an interest, from George Tubb to S. B. Bewley, dated December 21, 1876, authorizing Bewley to bring suit for 500 acres of the Naomi McKey deeded to George Tubb by Matilda F. and James B. McMahon on the 18th day of November, 1868, and providing that Bewley should have 200 acres of said land in the recovery for his services.

"(5) I find a deed from S. B. Bewley to E. P. Horne, dated January 6, 1875, conveying to said Horne an individual interest of 200 acres, out of the 500 acres of the Naomi McKey headright, known as the Pin Oak Pond place; it being the same tract of land deeded to Miller, Tubb & Co. by James B. and Matilda F. McMahon on the 15th of November, 1868.

"(6) I find a deed from Miller, Tubb & Co., dated June 7, 1876, to E. P. Horne, conveying the following lands: Being a part of the Naomi McKey survey, beginning at the northeast corner of the said original survey and running south with the east boundary line of said original survey; thence west with the north line of the G. S. Williams survey to William Scurlock's survey; thence with the east line of the said Wm. Scurlock to the north line of said league; thence east with the league line to the place of beginning, containing 500 acres, more or less.

"(7) I find a bond for title from James B. McMahon and E. P. Gaines to William Harris, dated the 28th day of January, 1837, obligating themselves to make to the said Harris a good and lawful title to 500 acres of land out of the Naomi McKey headright adjoining the land of Mrs. Yates Payne, Wayne Chumley, and others; said line running and commencing on the north side of the main road to Rio Sabine, and including a fine body of red land, on a part of which is the Pin Oak pond and a fine spring. Said Harris has the liberty of removing his lines to the best advantage, so as to include the good body of red land.

"(8) I find a deed from W. H. Harris to James B. Harris, dated January 14, 1859, conveying all of the interest and estate, real and personal, in the state of Texas, 'which I have in and to and concerning the estate of my father and mother.'

"(9) I next find a deed from S. H. Hardemand to John R. Smith, dated April 30, 1873, conveying 500 acres of the Naomi McKey, known as the Pin Oak Pond place on the Milam & San Antonio road.

"(10) I next find a deed from J. B. Harris to

Emma Jane Simpson, wife of A. J. Simpson, conveying to her all right, title, and interest in 300 acres, more or less, of the Naomi McKey headright as a son and heir of Wm. H. and Margaret W. Harris, deed dated May 18, 1873.

"(11) I find a deed from A. J. Simpson and wife, Emma Jane Simpson, to J. B. Harris, dated May 12, 1873, conveying all our right, title, and interest in 500 acres of the Naomi McKey known as the Pin Oak Pond place.

"(12) I find a deed from John R. Smith and wife, Francis A. Smith, dated May 12, 1873, conveying 200 acres, more or less, of the Naomi McKey survey on the San Antonio road 5 miles west of the town of Milam to James B. Harris.

"(13) I find a deed dated the 16th of June, 1876, from A. J. Simpson to E. P. Horne, conveying all their right, title, and interest in and to 500 acres of the Naomi McKey survey situated in the northeast corner of said survey, beginning at the northeast corner and running south with the east boundary line of said original survey; thence west with the north boundary line of the G. S. Williams survey to William Scurlock survey; thence with the east line of the Scurlock survey to the north line of said original survey; thence east with the north line of said league to the beginning, containing 500 acres of land, more or less.

"(14) I find a deed introduced for the purposes of description from Wm. F. Sparks to William Scurlock, dated November 24, 1838, and conveying the following described to commence at Wm. H. Harris southwest corner and run with the course of his line to the Chechee creek; thence up said creek to the old line; thence along said line to said Harris corner; thence with the said Harris' north and south and west boundary to the place of beginning.

"(15) I next find a deed from E. P. Horne and wife to N. B. Mason and T. G. Drawhorn, dated November 23, 1882, conveying a part of the Naomi McKey survey situated in the north corner of said league, and beginning at the northeast corner of said original survey, and running south with the east boundary line of said original survey; thence west with the north line of the G. S. Williams to William Scurlock's; thence with the east line of said William Scurlock to the north line of said original survey; thence east with the north line of said league to the place of beginning, containing 500 acres, more or less.

"(16) I next find a partition deed from N. B. Mason and wife to T. G. Drawhorn, deeding to Drawhorns the southern portion of the above 500 acres, dated November 23, 1882.

"(17) I next find a deed from T. G. Drawhorn and wife to J. A. Scurlock, dated January 30, 1886, conveying a portion of the McKey headright bounded as follows: Beginning at the southwest corner of the survey known as the survey bought of E. P. Horne by T. G. Drawhorn and N. B. Mason, the said N. B. Mason and T. G. Drawhorn now residing on said survey; thence north with the Scurlock east boundary line to what is known as the lower Milam & San Augustine road; thence with said road in an easterly direction to M. G. Langford's line; thence with said Langford's line and Isaiah Hamilton's line to the place of beginning, containing 50 acres, more or less.

"(18) I find next a deed from J. A. Scurlock to the San Augustine Grocery Company, dated April 16, 1906, conveying the same land by the same description, as the last above-mentioned deed.

"(19) I next find a deed from the San Augustine Grocery Company to J. A. Scurlock, dated February 28, 1916, conveying the same land by the same description mentioned in paragraph 17.

"(20) I next find a deed from J. A. Scurlock to J. M. Click, the plaintiff, dated March 23, 1916, conveying the same land described in the last paragraph, described more particularly as follows: Beginning at the southwest corner of

200 S.W.—17

a 500-acre tract of land commonly known as the Wm. H. Harris or Pin Oak Pond tract of land; thence in a northerly direction with the west boundary line of the said tract to the lower Milam & San Augustine road; thence east with said road to Rev. Ed Smith's west line, where said line crosses said road; thence in a southerly direction with said Smith's west line to the south line of said 500-acre survey; thence west to the place of beginning, containing all of the land on said 500-acre tract south of the lower Milam & San Augustine road, supposed to contain 90 acres, more or less, and being the same tract of land purchased from T. G. Drawhorn and wife by J. A. Scurlock, by deed of date 1886; said tract of land being situated on the N. McKey headright.

"(21) I find by the testimony of J. A. Scurlock that the 500 acres purchased by E. P. Horne in the northeast corner of the Naomi McKey survey has for a long time been known in the community as the W. H. Harris or Pin Oak Pond tract, and is bounded on the west by the lands of William Scurlock, described in the deed from William F. Sparks, dated November 24, 1838, and that the south line of the land in controversy is the south line of the 500-acre Wm. H. Harris or Pin Oak Pond tract.

"(22) I further find from the testimony of J. A. Scurlock that E. P. Horne occupied and claimed said 500 acres from about the beginning of the year 1875, to the time sold to Mason and Drawhorn in 1882, continuously, and that said 500-acre tract was then occupied by N. B. Mason and T. G. Drawhorn continuously up to the partition of said land on the 13th of November, 1882, and that Drawhorn occupied the south half of said 500 acres, claiming the same up to the 30th day of January, 1896, making more than ten years in continuous peaceable possession.

"(23) I find that a very small portion in the southwest corner of the land in controversy was occupied by Mrs. S. A. Hamilton for a period of more than ten years, but that her occupancy was a mere encroachment, and not accompanied by such assertion of title as would put the statutes of limitation in operation.

"(24) I further find that since the land in controversy was acquired by the plaintiff, there has been 25,000 feet of merchantable pine timber cut from said land by the defendant E. M. Luttrell, of the reasonable value of $2 per thousand.

"I therefore conclude as a

"Conclusion of Law

"That plaintiff, J. M. Click, has shown title to the land in controversy, and that he is entitled to a judgment therefor, together with judgment for $50 for the value of the timber cut by defendant E. M. Luttrell."

Assault is made on the findings of fact by the court in two particulars: First, that the testimony of J. A. Scurlock showed that the south line of the land in controversy is the south line of the Pin Oak Pond tract; and, second, that the occupancy of Mrs. Hamilton of the land in controversy was a mere encroachment, and not accompanied by such assertion of title as would put the statute of limitation in operation.

The first assignment of error is as follows:

"The court erred in its findings of fact as set out in the twenty-first paragraph of the findings of fact and conclusions of law filed by the court in this cause, wherein the court finds as a fact that the 'Pin Oak Pond' tract is bounded on the west by the lands of Wm. Scurlock, described in the deed from Wm. F. Sparks, dated November 24, 1838, and in finding that the south line of the land in controversy is the south line of

the 500-acre Wm. H. Harris or 'Pin Oak Pond' tract."

The propositions under this assignment are:

(a) "A call for an adjoining tract will control course and distance."

(b) "The various calls for description in deeds have been classified by the courts, and it is now settled that the highest in importance and weight arc: First, natural objects; second, artificial objects, such as marked lines, etc.; third, courses and distances."

(c) "The burden of proof is always on the plaintiff to show the object fixing the boundary, or true locality of the land sued for, and this burden never changes."

The testimony is not as full as it should be in identifying the south boundary line of the Pin Oak Pond tract, or rather the place where the Williams line was at that or any other time, as there seems to be no such tract as the Williams tract. However, while the north line of the G. S. Williams survey cannot be discovered on the map, the testimony of J. A. Scurlock, a son of William Scurlock, is as follows: That he is 54 years of age; that he knows where the Chechee creek near his father's old residence and west of the Pin Oak Pond tract is; that he is familiar with the lands owned by his father on that survey. He testified that the south line of his father's land on the Mackey survey lying east of the Chechee creek runs east and west, and that his father's land is bounded by the Pin Oak Pond tract on the east, and in the northeast corner of the Mackey league. He testified as to the identity of the Pin Oak Pond tract of William H. Harris' tract, saying that it was one and the same. He also identified the 300 acres of his father's land lying immediately west of the Pin Oak Pond tract. Witness had formerly owned the land in controversy; that he did not know where the land claimed by defendants was until a year or two ago, and had never heard of Mrs. Hamilton asserting any claim to any portion of the land in controversy; that he did not know where the south line of the Pin Oak Pond tract is, but that he did know where the line is that had been claimed to be the south line of the Pin Oak Pond tract, because there were no field notes to it, and the witness had always supposed that the land in controversy was a part of the Pin Oak Pond tract. On redirect examination this witness stated that the line claimed by plaintiff is plainly marked on the ground and seems to be very old, easily traced on the ground from one corner to the other; that witness had looked carefully to see whether there was any other line running away from that in a northeast direction, but could not find any after a thorough search, starting from a corner and looking in every direction. He further stated that this south line runs due east and west, in his judgment; that he had owned the land, and the line had been recognized as his line.

A deed was introduced from William F. Sparks to William Scurlock, dated November 24, 1838, in which the description is as follows:

"Commencing at William H. Harris' southwest corner, and run with the course of his line to the Chechee creek; thence up said creek to the old line; thence along said line to the said Harris corner; thence with said Harris' north and southwest boundary to the place of beginning."

This contract of land was identified by Scurlock as having belonged to his father and now occupied by him, and he further testified that the south line of this tract and the south line of the Harris or Pin Oak Pond were a continuation of the same line running from east to west through the Mackey league, thus identifying the south boundary of the Harris tract and its course as early as 1838.

The court found as follows:

"I find by the testimony of J. A. Scurlock that the 500 acres purchased by E. P. Horne, in the northeast corner of the Naomi Mackey survey, has for a long time been known in the community as the W. H. Harris or Pin Oak Pond tract, and is bounded on the west by the lands of William Scurlock, described in the deed from William F. Sparks, dated November 24, 1838, and that the south line of the land in controversy is the south line of the 500-acre William H. Harris or Pin Oak Pond tract."

[1] From all the testimony before the court, it is evident, and he has so found, and this finding, as shown above, rests upon the testimony, which, if believed, is sufficient to support the finding. The assignment is overruled.

The second assignment of error is as follows:

"The court erred in finding as a fact that E. P. Horne occupied and claimed the said 500 acres from about the beginning of the year 1875 to the time he sold to Mason and Drawhorn in 1882, continuously, and that the said 500-acre tract was then occupied by N. B. Mason and T. G. Drawhorn continuously up to the partition of said land on the 13th of November, 1882, and that the said Drawhorn occupied the south half of said 500 acres, claiming the same up to the 30th day of January, 1886, making more than ten years in continuous, peaceable possession, and in finding that said possession of the said Horne, Mason, and Drawhorn was the possession of the land in controversy in this suit."

The court found that from the testimony of J. A. Scurlock, E. P. Horne occupied and claimed 500 acres from about beginning in the year 1875 to the time he sold to Mason and Drawhorn in 1882, continuously, and that said 500-acre tract was then occupied by N. B. Mason and T. G. Drawhorn continuously up to the partition of said land on the 13th of November, 1882, and that Drawhorn occupied the south half of said 500 acres, claiming the same up to the 30th day of January, 1886, making more than ten years in continuous peaceable possession.

[2] It seems that Click, the appellee, is claiming the land under a chain of title from and perhaps beginning with Mason and Drawhorn, and therefore his title is dependent upon whether the said Mason and Drawhorn occupied and lived on and claimed adversely

the land for a period of ten years. Appellee made no attempt to plead limitation as part of his title, and limitation, to be available, must be specially pleaded under the statutes. This omission in the pleadings makes it necessary that this case be reversed and remanded, so, without commenting on the other assignments, we desire only to state that the entire record is in a very unsatisfactory condition, and we hope that in many respects much light may yet be shed upon matters embraced in the first assignment, and that the true location of the Williams north boundary line may be more thoroughly established, although, as presented by this record, we have held, the court having found as much, and there being testimony to support the finding, that the first assignment of error was untenable.

Believing that upon another trial of the case the pleadings will be in a more satisfactory condition, and the proof will be much clearer in many respects, and for the errors above mentioned, the case must be reversed and remanded for a new trial.